IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YEAKAIN YABU KOROMA,<br><br>Defendant. | Case No. 1:19-cr-327<br><br>The Honorable Leonie M. Brinkema<br><br>Sentencing: February 7, 2020 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, through undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines"), § 6A1.2, files this Position of the United States with Respect to Sentencing in the instant case. The defendant has pleaded guilty to engaging in the business of dealing firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), and 2. The United States has no objection to the Guidelines' calculation and factual information contained in the Presentence Investigation Report ("PSR"). The PSR accurately reflects that the defendant's advisory Guidelines range is 18 to 24 months. The United States respectfully submits that this sentencing range is reasonable and appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a), and accordingly requests that this Court impose a sentence of 18 months of imprisonment.

**LEGAL STANDARD**

Even though the Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 224 (2005). "[A] district court shall first calculate (after making the appropriate findings of

fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) states that the court should consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). In addition, it states that the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). The sentence should also protect the public from further crimes of the defendant and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D).

## SENTENCING GUIDELINES

### A. The Advisory Guidelines Range.

The United States and the United States Probation Office ("Probation") agree as to the applicable Guidelines in this case. In particular, the United States and Probation agree that, pursuant to the terms of the plea agreement: The applicable Guidelines provision is Section 2K2.1, and the base offense level is twelve. Guidelines § 2K2.1(a)(7). Moreover, because the offense involved at least twenty-six firearms, the offense level is increased by six. Guidelines § 2K2.1(b)(1)(C). In addition, because the defendant assisted the United States in the investigation and prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the defendant qualifies for a two-level decrease in offense level pursuant to Guidelines Section 3E1.1(a), and the United States hereby moves the Court to award an additional one-level decrease in the offense level pursuant to Guidelines Section 3E1.1(b).

The above Guidelines calculation results in an adjusted offense level of 18 and a total offense level of 15. After determining the defendant's criminal history to be at Category I, Probation properly identified the Guidelines range to be 18 to 24 months' imprisonment.

### B. The Defendant Was Neither a Minor nor Minimal Participant in the Crime.

Despite the findings of Probation, the defendant objects to the Guidelines calculation, arguing that the defendant should receive a minimal or minor participant adjustment under Guidelines Section 3B1.2. The United States concurs with Probation's conclusion that the defendant's objection is without merit, and that the defendant does not qualify for either a minimal or a minor participant adjustment.

Under the Guidelines, a range of adjustments are available for "a defendant who plays a part in committing the offense that makes him *substantially less culpable* than the average participant in the scheme." Guidelines § 3B1.2 app. note 3(A) (emphasis added). Specifically, a defendant who is "plainly among *the least culpable of those involved* in the conduct of a group" may receive a "minimal participant" adjustment. Guidelines § 3B1.2 app. note 4 (emphasis added). A defendant "who is less culpable than *most other participants* in the criminal activity" may receive a "minor participant" adjustment. Guidelines § 3B1.2 app. note 5 (emphasis added). "The defendant has the burden of showing by a preponderance of the evidence that [s]he is entitled to a mitigating role adjustment." *United States v. Ojeda-Cruz*, 29 F. Appx 152, 156 (4th Cir. 2002). The defendant has made no such showing.

"In determining whether [a minimal or minor role] adjustment is warranted, a court looks to whether the defendant's conduct was 'material or essential to committing the offense.'" *United Sates v. Offill*, 666 F.3d 168, 179 (4th Cir. 2011) (quoting *United States v. Blake*, 571 F.3d 331, 352–53 (4th Cir. 2009)). The defendant does not—and could not—contest that her actions were material and essential for the functioning of the scheme. A full review of the record demonstrates

3

that the defendant's conduct in furtherance of the scheme was extensive and essential. No later than January 2018, the defendant began purchasing firearms from a cooperating witness ("CW") and reselling them to make a profit. Only later did Cornelius Maurice King, Jr., who is in a relationship with the defendant, become involved in the scheme. In fact, the defendant was directly involved in the sale of each of the firearms at issue in the Statement of Facts, as each bill of sale lists the defendant as the seller of the firearm. *See United States v. Guerrero-Deleon*, 713 F. App'x 163, 166 (4th Cir. 2017) ("'[U]nderstanding of the scope, structure and activities of the conspiracy' indicates that his role was more than merely minor." (quoting *United States v. Reavis*, 48 F.3d 763, 769 (4th Cir. 1995))). As the defendant admits in her filing, "Ms. Koroma's name appears on the Bills of Sale because, as she has described, because of Mr. King's prior convictions they did not think he could legally sell firearms." Dkt. 38, at 7. This admission makes plain the material and essential nature of the defendant's conduct: but for her involvement, Mr. King would not have engaged in the criminal conduct. *See United States v. Orta-Rosario*, 469 F. App'x 140, 147 (4th Cir. 2012) (holding that no minor role adjustment is appropriate where the defendant "was the 'without which factor' that allowed [the scheme] to operate").

Instead, the defense seems to rely on the proposition that the defendant must be a minor participant because, in the view of the defendant, the CW "was, in all likelihood, the leader." Dkt. 38, at 6. But this argument rests on an incorrect interpretation of the members of the scheme to traffic in firearms. As the Criminal Information and Statement of Facts make clear, only two individuals were involved in the scheme to deal in firearms without a license: Ms. Koroma and Mr. King. No one else. The CW was nothing more than a source of supply; Ms. Kororma was selling guns for herself and her own enrichment. The CW had no role in the essential conduct of the defendant's crime—the reselling, for profit, of the twenty-six firearms in the Statement of

4

Facts. The Court should, therefore, reject the defendant's efforts to bring the CW into the scheme in order to bolster her minor role argument.

Moreover, the defendant's approach opens the floodgates to including in the scheme every person Mr. King and Ms. Koroma purchased guns from or sold guns to. But even if all buyers and sellers were considered, Mr. King and Ms. Koroma would—as the sole dealers with respect to the transactions at issue[1]—nevertheless have the primary roles in the firearms trafficking offense, and no persuasive argument could be made that the defendant was substantially less culpable than the average participant in the scheme. Likewise, even if the defendant's claim were correct that the CW was "the leader" of the scheme—and he was not—that alone is not enough to support a minor participant adjustment where the defendant's conduct was material and essential to the firearms dealing. *See United States v. Hosein*, 581 F. App'x 199, 201 (4th Cir. 2014) ("The fact that [another individual] was the instigator . . . [of the defendant]'s actions does not negate the fact that she was indispensable to their repeated crimes.").

Critically, the defendant admits that she and Mr. King have similar levels of culpability. *See* Dkt. 38, at 7 ("Ms. Koroma and Mr. King shared responsibility for re-sales."). That resolves the issue: when two individuals are both equally culpable and responsible for all the essential conduct, neither can receive a mitigating role adjustment. The defendant speculates, "It appears that Mr. King may have had an awareness of the illegality of his conduct beyond what Ms. Koroma did." Dkt. 38, at 7. But such untethered speculation cannot carry the defendant's burden. Moreover, contrary to the defendant's claims in her most recent filing, in her April 18, 2019

---

[1] Even if the CW were engaged in a broader scheme, a reduction for role is not appropriate when the defendant has been charged with and held responsible for only the transactions she engaged in. *See, e.g.*, *United States v. Ward*, 908 F. Supp. 350, 353 (E.D. Va. 1995), *aff'd*, 97 F.3d 1450 (4th Cir. 1996); *see also* Guidelines § 3B1.2 app. note 3(B).

interview with law enforcement, the defendant took full responsibility for her role in the offense, admitting, "I sold guns, and I received the bill of sales." In fact, the defendant even sought to minimize the role of Mr. King in that interview, telling law enforcement, "He has a misdemeanor and a concealed weapon on his background, so he couldn't sell them, so I sold them because my record is good." The defendant claimed Mr. King became involved in arranging sales, and was present at sales only "to make sure the people were legit, that people weren't ripping me off." Based on the defendant's pervasive and essential involvement in the scheme, from start to finish, it is clear that she does not satisfy the standards for either a minor or minimal role adjustment. *See* Guidelines § 3B1.2 app. note 3(C)(i) (identifying relevant factors to include "the degree to which the defendant understood the scope and structure of the criminal activity," "the nature and extent of the defendant's participation," and "the degree to which the defendant stood to benefit from the criminal activity"); *see also United States v. Blake*, 571 F.3d 331, 352 (4th Cir. 2009) ("In determining whether the adjustment applies, we consider not only 'the defendant's conduct relative to the other defendants, but also . . . his or her conduct relative to the elements of conviction.'" (quoting *United States v. Akinkoye*, 185 F.3d 192, 202 (4th Cir. 1999))).

Accordingly, the Court should embrace the findings of Probation and reject the defendant's request for a minimal or minor role adjustment.

    **C.    The Guidelines Appropriately Apply an Enhancement Based on Trafficking in a Significant Number of Firearms.**

The defendant further objects that "[a]n increase of +6," under Guidelines Section 2K2.1(b)(1)(C), which is applied because the defendant sold twenty-six firearms, "though accurate, is overly harsh and arbitrary." Dkt. 38, at 5.[2] In raising this objection, the defendant

---

[2] It is unclear whether the defendant is calling for any revision or correction to the Guidelines

explicitly acknowledges, as she must, that the Guidelines are properly calculated. There is no dispute that the defendant and Mr. King bought and sold twenty-six firearms between January 2018 and July 2018. The Guidelines, accordingly, make clear that a six-level enhancement is appropriate under these circumstances. Guidelines § 2K2.1(b)(1)(C).

An enhancement for the number of firearms involved in an offense is not, as the defendant contends, "arbitrary," but rather appropriately "ensure[s] adequate and proportionate punishment in cases that involve large numbers of firearms." Guidelines Supp. Appx. C, Amend. 631 (Nov. 1, 2001). This case demonstrates the wisdom of such an enhancement. For many months, the defendant knowingly and willfully trafficked in dozens firearms without a license. The Guidelines appropriately recommend a harsher sentence for her than for an individual whose crime involves a single transaction or two, involving a small number of firearms; likewise, the Guidelines recommend more lenient treatment for the defendant than for an individual guilty of trafficking in hundreds of firearms for years. That these defendants should be treated differently should be self-evident, but that principle is also embodied in the direction, by Congress, that a sentencing court consider "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1). Because the defendant put dozens of firearms into the community, without accountability, the Guidelines appropriately account for the seriousness of that offense through this enhancement.

## 18 U.S.C. § 3553(a) FACTORS

A sentence of 18 months' imprisonment is appropriate and reasonable given the serious nature of the defendant's crime. Between January 19, 2018 and June 5, 2018, the defendant illegally trafficked twenty-six firearms. The defendant seeks to minimize her conduct, asking

---

calculation. For the avoidance of doubt, the United States believes that none is warranted. Moreover, the defendant has stipulated to the applicability of this enhancement in the plea agreement. *See* Dkt. 35.

"What is it that makes i[t] inherently bad to sell a firearm for profit?" Dkt. 38, at 4. Unlawful firearms dealing is a significant crime that poses a substantial danger to the community. When an individual steps outside the confines of the law to traffic firearms free of any oversight, she puts the entire community at risk. For months, the defendant knowingly disregarded the risks inherent in her conduct, as she bought and sold dozens of firearms. Criminals know they can purchase firearms from an unlicensed dealer and effectively avoid detection by law enforcement.[3] It is precisely this ability to avoid detection that explains why unlicensed dealers are able to command an above-market fee for their firearms. Firearms dealt illegally in this manner are routinely used to commit crimes. Only a handful of the firearms the defendant bought and sold have been recovered at this point; troublingly, most of these firearms remain unaccounted for.

In terms of the defendant's history and characteristics, that the defendant has only a minor criminal history is undoubtedly in her favor.[4] This mitigating factor is appropriately reflected in the Guidelines, which categorize her as a Criminal History Category I. In light of the defendant's history and characteristics, including her minor criminal history, the United States submits that a sentence at the low end of the Guidelines range is appropriate in this case.[5]

---

[3] The defendant protests that "[s]he did not sell the[ firearms] to a prohibited person." Dkt. 38, at 5. It would be more accurate to say that the defendant does not know whether she sold any firearms to a prohibited person because, unlike a federal firearms licensee, she never bothered to check. This issue highlights the risks associated with unlicensed dealing.

[4] But, notably, this is not the defendant's first brush with the law. On November 5, 2014, she was charged with tampering with a vehicle in Fairfax County General District Court, based on the defendant having broken into another individual's vehicle. On January 5, 2015, the defendant pleaded nolo contedere and was sentenced to a term of imprisonment of thirty days, all suspended.

[5] Mr. King was sentenced on January 31, 2020 and received a below-Guidelines sentence—specifically, a term of imprisonment of 18 months, to be followed by a three-year term of supervised release. Because Mr. King's criminal history was category III, his Guidelines range was 24–30 months. The United States recommended a 27-month term of imprisonment in that

8

The United States does not, however, believe a below-Guidelines sentence is appropriate. The defendant's criminal conduct was not an aberration, nor was it a momentary lapse in judgment. For many months, the defendant knowingly and willfully made it her business to traffic in dozens of firearms without a license, despite knowing it was wrong.[6]  A sentence of 18 months' imprisonment will serve not only to punish the defendant for her crime but also to deter her and others from engaging in similar conduct.  Moreover, such a sentence will protect the community from the defendant's criminal conduct.  Conversely, a below-Guidelines sentence risks understating the seriousness of the offense and not providing adequate deterrence to criminal conduct.  The defendant claims that "[a] felony conviction alone affords adequate deterrence to criminal conduct."  Dkt. 38, at 10.  But the Court should consider not only specific, but also general deterrence.  And a brief term of imprisonment—or, as the defendant suggests, a probationary sentence—would not serve the important goal of deterring others from engaging in the same conduct.  Accordingly, the United States submits that a sentence of 18 months is a necessary and just punishment that appropriately reflects the nature and circumstances of the offense and the history and characteristics of the defendant, promotes respect for the law, and accomplishes the goals of deterrence and protection of the public.

---

case, in the middle of the Guidelines range.  *See United States v. Cornelius Maurice King, Jr.*, 1:19-cr-315.

[6] The defendant strains to further minimize her conduct by saying that she merely did not know she needed a license to deal in firearms.  But the defendant also knew her conduct was wrong, *see* Dkt. 36 (admitting that the defendant "*willfully* engage[d] in the business of dealing in firearms" without a license), as she must have for a conviction to be sustained under the statute, *see Bryan v. United States*, 524 U.S. 184, 191 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'").  Critically, it is not just that the defendant sold firearms without a license in this case, but also that she entered the scheme precisely to evade the law because, by her own admission, she believed Mr. King could not legally sell firearms.

## CONCLUSION

For the reasons stated, the United States asks this Court to impose a sentence of 18 months of imprisonment.

        Respectfully submitted,

        G. Zachary Terwilliger
        United States Attorney


By: _____/s/_____
        Anthony W. Mariano
        Special Assistant United States Attorney
        Patricia T. Giles
        Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone: (703) 299-3700
        Fax:   (703) 299-3868
        Anthony.Mariano2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2020, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

                                /s/
Anthony W. Mariano
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax:    (703) 299-3868
Anthony.Mariano2@usdoj.gov